**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 10-60168-COHN/GOODMAN**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RONALD GABEL,

      Defendant.

_____/

**AMENDED[1] REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO SUPPRESS**

THIS MATTER is before the Court upon Defendant Ronald Gabel's Motion to Suppress and Request for *Franks* Hearing (DE# 31-33). This motion was referred by the Honorable James I. Cohn, United States District Judge, and then transferred to me by the Honorable Barry Seltzer, United States Magistrate Judge, on August 2, 2010 (DE# 42, 43). Having carefully considered Gabel's motion, the Government's response (DE# 52), the court file and the applicable law, and with the benefit of an evidentiary hearing and oral argument, I respectfully recommend that Gabel's motion be denied.[2]

**I.      INTRODUCTION**

The parties do not dispute the basic factual events leading up to Gabel's arrest and indictment. Instead, this motion hinges on a legal issue of first impression in this Circuit: whether users sharing files on peer-to-peer file-sharing networks have a reasonable expectation of privacy in their shared files, thereby protecting them from warrantless searches by law enforcement using enhanced computer programs unavailable to the

---

[1]     This Report amends the one uploaded last night after the close of business hours. It does not in any way change the recommendation or the substantive analysis.

[2]     At the conclusion of the evidentiary hearing, I gave Defendant the opportunity to submit a post-hearing memorandum but he did not file any additional memoranda or exhibits or other supporting material.

general public.  The Undersigned finds that no reasonable expectation of privacy exists in this situation -- and, consequently, no Fourth Amendment violation.

On May 7, 2010, state law enforcement officers arrested Gabel while executing a search warrant on his girlfriend's home.  The officers found numerous images of child pornography on Gabel's laptop computer.  After waiving his *Miranda* rights, Gabel confessed to downloading and possessing child pornography.

A federal grand jury indicted Gabel on June 8, 2010, for violating 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2), which make it a crime to knowingly possess and access with intent to view, by any means and facility of interstate or foreign commerce, depictions of minors engaged in sexually explicit conduct.

Gabel filed a motion to suppress (1) the evidence gathered during warrantless searches of his computer files, (2) the evidence gathered in his girlfriend's residence during execution of the search warrant, and (3) his confession.  Gabel makes three main arguments for suppression:

(1)  On April 29, 2010, and May 3, 2010, Detective Joe Vella of the Broward County Sheriff's Office conducted an unconstitutional search of Gabel's computer by using a program available only to law enforcement.  Although Gabel voluntarily shared his files with other computer users, he contends that he had a reasonable expectation of privacy that his files would not be searched by law enforcement using an enhanced computer program unavailable to the general public.  Gabel moves to suppress the evidence obtained from this search, which consists of computer files containing images of child pornography downloaded from his computer.

(2)  The search warrant executed on Gabel's girlfriend's home was invalid because law enforcement omitted material information from the affidavit in support of the warrant, in violation of *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  According to Gabel, the police should have informed the state circuit court judge who issued the warrant that they used a computer program available only to law enforcement in order to download files from Gabel's computer.

(3)  The search warrant was insufficiently specific as to the items which it authorized to be searched and seized, and was therefore unconstitutionally overbroad.

2

Gabel argues that because the search warrant was invalid, all the evidence seized at his girlfriend's home should be suppressed.   As well, Gabel contends that his confession should be suppressed as the fruit of an unconstitutional search.

The Government argues that the initial search of Gabel's computer was valid because Gabel had no reasonable expectation of privacy in files that he shared with thousands (perhaps millions) of users over a peer-to-peer file sharing network.   The Government further argues that the affidavit submitted in support of the warrant did not omit material information with reckless disregard for the truth, as required for suppression under *Franks*, and that the warrant sufficiently particularized the items to be seized.

I held an evidentiary hearing on September 2, 2010.   The Government presented the testimony of Detective Joe Vella of the Broward County Sheriff's Office and Investigator Donald P. Cannon of the Florida Attorney General's Office.   Both Vella and Cannon work in units specifically dedicated to investigating exploitation of children on the internet.   Gabel's counsel cross-examined Vella and Cannon.   The Government offered into evidence as Exhibit 1 a PowerPoint presentation prepared by Cannon, which describes the file-sharing technology used by Gabel and law enforcement. Gabel appended the following exhibits to his motion to suppress: the indictment (Ex. A), the affidavit for search warrant sworn by Cannon (Ex. B), the search warrant (Ex. C), and an incident report from the Broward Sheriff's Office (Ex. D).   (See DE# 34-41).

At the hearing, I found that Gabel did not make a "substantial preliminary showing" that Cannon acted with reckless disregard for the truth in omitting material information from his affidavit in support of the search warrant.   I therefore denied Gabel's motion to hold an evidentiary hearing pursuant to *Franks*.

## II.    FINDINGS OF FACT

On April 29, 2010, and May 3, 2010, Detective Joe Vella of the Broward County Sheriff's Office discovered that an internet user was sharing files over a peer-to-peer (P2P) file-sharing network called Gnutella.[3]  All Gnutella peers have a "shared folder" on

---

[3]      Users of P2P networks are called "peers" or "ultra-peers," the latter of whom increase network efficiency by maintaining an index of the contents of network peers.  P2P networks like Gnutella allow peers to download files from multiple other

their computer. This folder's contents are available for search and download to all other peers logged onto the network at a given time. Although most peers log onto Gnutella using widely-available Gnutella clients such as Limewire, Morpheus, Bearshare, or Shareaza,[4] Vella logged on using a program called ShreazaLE. ShreazaLE is a law enforcement enhanced program which has **no greater access to other users' shared files than any other Gnutella client**. ShreazaLE does, however, organize data and download files in a manner that screens for child pornography and creates an evidentiary record.

For example, when a typical Gnutella peer wants to download a song or movie, he will usually do so by downloading from multiple users, which reduces download time. Although individual peers *can* download a file solely from one other individual peer, ShreazaLE is automatically set to do so. In this way, law enforcement can confirm that a file containing images of illegal child pornography came from a single source. This assists law enforcement in proving that illegal images of child pornography came from a single source, rather than trying to prove which part of the image came from which source.

The "browse" or "search" function on Gnutella clients permits peers to view files being shared from a specific user and allows peers to choose among those files for download. Gnutella makes public to all peers the IP (internet protocol) addresses of all others peers. The IP address is a unique number assigned to everyone who logs onto the internet. It also makes available the "SHA-1" values of the files available for download. A SHA-1 value, where information is given an arithmetic algorithm, is, in effect, a digital fingerprint specific to each computer file. Thus, while two users might title a file differently, the network is able to identify that the two files are the same for download

---

peers at the same time. For example, if Peer A wants to download song X, and Peers B,C,D,E, and F all have song X on their computers in folders designated for file sharing, Peer A can simultaneously download song X from Peers B through F. This download process is much more efficient than the model which preceded it, in which a peer downloaded from only one other source. In this example, Peer A would download parts of the song from Peers B through F, and the parts would then be reassembled in the complete and identical file on Peer A's computer. *See also MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 922 (2005) (describing Gnutella network).

[4] The images available to a peer are the same, regardless of whether Limewire, Morpheus or other clients are being used.

purposes.  Users searching for child pornography frequently search for files under code names, such as "pthc," which stands for "pre-teen, hard core."

Keeping track of SHA-1 value is important to law enforcement investigating child pornography.  Using a national database of "child notable" images, which are images that officers from around the country consider to be illegal child pornography in their jurisdiction, law enforcement can scan for files previously identified as containing child pornography without having to download and view them.

On April 29, 2010, Vella, a detective in the Internet Crimes Against Children South Florida Task Force, logged onto Gnutella using ShreazaLE.  Vella saw that Gabel's IP address was offering more than 1,000 files for distribution, and he was able to determine that they likely contained child notable images because ShreazaLE cross-referenced their SHA-1 values.  Gabel's IP address at that time was sharing more child notable files than any other IP address in Florida.  Vella downloaded more than 100 child notable files from Gabel's shared folder on April 29, 2010 and again on May 3, 2010. Vella opened the files to verify that they contained images of child pornography.  The files Vella viewed included images of children under age 12 exposing themselves and being sexually assaulted by adults.

Vella then contacted Cannon, who works in the Child Predator Cybercrime Unit of the Florida Attorney General's Office.  As it turned out, Cannon had already independently determined that Gabel's IP address was sharing more than 100 known or suspected images of child pornography and was preparing to obtain a search warrant. Cannon used software known as the Wyoming Tool Kit, an enhanced program available only to law enforcement.  Like ShreazaLE, the Wyoming Tool Kit is designed to identify, track, and gather evidence of illicit child pornography on the internet.  Cannon determined that the files on Gabel's computer depicted images of *actual* children -- not digital images -- and that the children were under 18 years of age.

Using publically available data, Cannon determined that Gabel's IP address was assigned to Comcast Cable Communications.  Cannon subpoenaed from Comcast the

physical address where the computer using the IP address was located, which was a residence in Weston, Florida.[5]

Although the enhanced law enforcement programs which Vella and Cannon used allowed them to document and track IP addresses sharing child pornography, at no time before obtaining the subpoena and search warrant did they access information that was unavailable to any other Gnutella peer.  Any member of the general public could have logged onto Gnutella and downloaded all of the files which Vella and Cannon downloaded in this case, and they could have determined the IP address sharing those files.  Thus, the main difference between the law enforcement enhanced programs and the Gnutella client programs used by the public is that the law enforcement versions automatically document and save publically available information.

Based on the information gathered in his search of Gabel's shared files, Cannon submitted a 27-page affidavit for a search warrant of the Weston residence.  Cannon's affidavit included detailed descriptions of how he searched for child pornography over the internet, how he identified the files Gabel was sharing as child pornography, and how he determined that there was probable cause to believe that many of the files were stored at the Weston residence.  Broward County Circuit Judge Thomas M. Lynch signed a search warrant on May 6, 2010, authorizing law enforcement to search the Weston residence and seize materials having do to with child pornography, such as film, books, tape recordings, or magazines, as well as any computer, digital storage device, or other computer accessory, that relate to possession and distribution of child pornography.[6]

Law enforcement executed the warrant on May 7, 2010.  Gabel was in the Weston residence with his girlfriend.  The officers searched Gabel's computer and found images of child pornography.  Gabel waived his *Miranda* rights and confessed on audiotape.  He admitted that he used Limewire to download child pornography.  Law enforcement showed Gabel 100 images of child pornography found on his computer and Gabel admitted that he had downloaded them.

---

[5]     I will refer to this location as the "Weston residence."

[6]     A complete list of the items authorized to be seized by the search warrant is excerpted in the Government's memorandum of law (DE# 52, at 7-8).

### III.    LEGAL ANALYSIS

#### a.  Constitutionality of Warrantless Searches of Gabel's Files

The Fourth Amendment protects individuals from "unreasonable searches and seizures."  Whether the Fourth Amendment protects an individual's property from a warrantless search turns on whether the individual "can demonstrate a reasonable expectation of privacy against government intrusion."  *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (citing *Katz v. United States*, 389 U.S. 347, 353 (1967)).  "[O]nly individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search."  *Cooper*, 203 F.3d at 1284 (citing *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)).  "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy."  *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006).  "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable."  *Id.* (quoting *United States v. Robinson*, 62 F.3d 1325, 1328 (11th Cir. 1995)).

The Government does not contest that Gabel had a subjective expectation of privacy, but argues that Gabel did not enjoy an objective expectation of privacy that society is prepared to recognize as reasonable because he voluntarily shared his files with all the users on the Gnutella network.  Gabel argues that he had an objective expectation of privacy because he had a reasonable expectation that his files would be accessible only to those logging onto the Gnutella network through the usual clients.  Thus, Gabel contends that law enforcement's use of an enhanced computer program, instead of a standard Gnutella client, to browse and download his files, violated his objective expectation of privacy.

Although the Supreme Court has not addressed the issue of peer-to-peer file sharing in the Fourth Amendment context, it has held, in a consistent line of cases, that individuals have no reasonable expectation of privacy in information exposed to the public or shared with third parties.  *See, e.g.*, *United States v. Miller*, 425 U.S. 435, 442 (1976); *Couch v. United States*, 409 U.S. 322, 335-36 (1973); *Katz v. United States*, 389 U.S. 347, 351 (1967); *Hoffa v. United States*, 385 U.S. 293, 302 (1966).

The Eleventh Circuit has also not squarely addressed the issue of whether a user on a peer-to-peer network enjoys a reasonable expectation of privacy.  However, the Eleventh Circuit decided an extremely similar issue in *United States v. King*, 509 F.3d 1338, 1342 (11th Cir. 2007), where it held that a defendant who made files available to thousands of individuals on a military network had no reasonable expectation of privacy in those files.  Significantly, *King* rejected the defendant's argument that the military computer specialist's actions violated the Fourth Amendment.  After observing that the "computer specialist did not employ any 'special means' to access King's computer because 'everybody on the entire network' could obtain the same access," *id.* at 1340, the Eleventh Circuit opined that

> rather than analyzing the military official's actions as a search of King's personal computer in his private dorm room, it is more accurate to say that the authorities conducted a search of the military network, and King's computer files were a part of that network.  *King's files were exposed to thousands of individuals with network access, and the military authorities encountered the files without employing any special means or intruding into any area which King could reasonably expect would remain private.*  The contents of his computer's hard drive were akin to items stored in the unsecured common areas of a multi-unit apartment building or put in a dumpster accessible to the public.

*Id.* at 1342 (emphasis added).

Thus, the Eleventh Circuit considered the fact that the defendant exposed his files in the public domain to be dispositive of whether the defendant had a reasonable expectation of privacy in those files, even though only those on the military network could access the defendant's files.  Gabel's objective expectation of privacy was, if anything, *weaker* than the defendant's in *King* because Gabel voluntarily shared his files over a much larger, worldwide network accessible to hundreds of thousands -- if not millions -- of users.

Three courts of appeals have held that users on peer-to-peer networks do **not** enjoy a reasonable expectation of privacy in their shared files.  *See United States v. Perrine*, 518 F.3d 1196, 1204-05 (10th Cir. 2008); *United States v. Stults*, 575 F.3d 834, 842-43 (8th Cir. 2009); *United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008).

8

The parties' briefing and the Court's independent research indicate that no court has reached a contrary conclusion in a published opinion.

Notwithstanding these cases, Gabel argues that he had a reasonable expectation that only those users logging on the Gnutella network in the usual manner would be able to view his files. Since law enforcement used enhanced programs unavailable to the public, which enabled them to target their search, more easily identify images of child pornography and create a log reflecting Gabel's file-sharing history, Gabel argues that their warrantless search violated the Fourth Amendment. Gabel's argument, apparently, is that the use of these law enforcement tools, because Gabel did not consent to their use, somehow created an expectation of privacy in files which he voluntarily shared with the thousands of users on the Gnutella network.

The Ninth Circuit rejected an identical argument in *United States v. Borowy*, 595 F.3d 1045, 1047-48 (9th Cir. 2010), where the defendant complained that the police used a "'forensic software program' that is unavailable to the general public to confirm that the files contained child pornography." *Id.* at 1048. The Ninth Circuit analogized the situation to *California v. Ciraolo*, 476 U.S. 207, 213-14 (1986), where the Supreme Court held that law enforcement did not violate the Fourth Amendment by using an aircraft to observe marijuana plants because the information revealed was accessible to any member of the flying public. Here too, Gabel "already exposed the entirety of the contents of his files to the public, negating any reasonable expectation of privacy in those files." *Borowy*, 595 F.3d at 1048 (citing *King*, 509 F.3d at 1341-42).

In *United States v. Knotts*, 460 U.S. 276 (1983), the Supreme Court also rejected a Fourth Amendment claim where the police used enhanced technologies to assist them in gleaning information that was otherwise public. In order to track drug-related materials, the police in *Knotts* arranged to place a radio transmitter in a chloroform container and thereby track the vehicle carrying the container. The Supreme Court noted that while the radio transmitter may have aided the police, visual surveillance of the vehicle would have revealed the same information; therefore, the defendant has no reasonable expectation of privacy in his route. The Supreme Court noted that the Fourth Amendment did not prevent "the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case." *Id.* at 282.

Similarly, in *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979), the Supreme Court, relying on the line of cases holding that individuals have no legitimate expectation of privacy in information shared with third parties, held that individuals do not have a reasonable expectation of privacy in the telephone numbers they dial.  (It is widely known that the telephone companies keep records of such calls).  *Smith*'s reasoning strongly cuts against Gabel's argument that, although he shared his computer files with some users, he had a legitimate expectation of privacy that law enforcement would not download his files with an enhanced program.  Under *Smith*'s reasoning, the fact that Gabel shared his files with *some third party* is enough to vitiate any legitimate expectation against disclosure to law enforcement.[7]

The enhanced law enforcement software used in this case did not search any areas of Gabel's computer, download any files, or otherwise reveal any information that was unavailable to ordinary internet users.  *Cf. Kyllo v. United States*, 533 U.S. 27, 40 (2001) (holding that when law enforcement "uses a device that is not in general public use, to explore details . . . *that would previously have been unknowable* without physical intrusion, the surveillance is a 'search.'") (emphasis added).  Rather, the enhanced software allowed law enforcement to gather and evaluate publically available information with greater efficiency and with an eye towards obtaining probative and admissible evidence of criminal activity.

The Undersigned agrees with every other federal court to have addressed this issue, and finds that users of peer-to-peer networks do not enjoy a reasonable, objective expectation of privacy in the files they share.  The Undersigned also agrees with the Ninth Circuit's view in *Borowy* that law enforcement's use of a computer program which allows them to confirm whether the files contain child pornography has no bearing on whether defendants possess a legitimate expectation of privacy in those pornographic files.  Any of the hundreds of thousands (or millions) of users on the Gnutella network

---

[7]        Following *Smith*, Congress enacted legislation requiring court orders for pen registers and trap and trace devices.  Pursuant to 18 U.S.C. § 3122(b), the Government may obtain an order approving the installation of a pen register or trap and trace device by submitting a sworn application certifying that the information likely to be obtained is "relevant to an ongoing criminal investigation."  The enactment of this statutory scheme, of course, does not detract from the persuasiveness of *Smith*'s reasonableness analysis under the Fourth Amendment.

could have searched for Gabel's shared files and downloaded those files exclusively from Gabel. That is exactly what law enforcement did here.

The enhanced programs merely permitted law enforcement to more easily organize and classify information that was otherwise available to the public, which aided them in obtaining evidence to support a search warrant. Gabel had no reasonable expectation of privacy in his files. He was, essentially, sharing them with the entire world. *Anyone* with internet access could have easily downloaded Gnutella client software, logged onto the network and downloaded Gabel's files. The fact that law enforcement did so with a device that enabled them to screen for child pornography and collect data for evidentiary purposes does not alter the privacy analysis or in any way shroud Gabel with the Fourth Amendment's protection. It simply means that the police were doing their job. The tool used by law enforcement here is no different, from a constitutional perspective, than the myriad special means -- street cameras, radar and canines -- that police legally use every day without prior judicial approval to efficiently gather evidence by accessing public information. These police tools do not generate Fourth Amendment concerns because they do not access anything which the public cannot access. Thus, law enforcement's use of an enhanced computer program is the digital equivalent of a pole camera, which is legal and which does not require a warrant or court order.

### b. Validity of Search Warrant

### i. Probable Cause Determination by Judge Lynch

Gabel argues that the search warrant signed by Judge Lynch was not supported by probable cause. He argues that Cannon did not confirm the names or identities of the children depicted to determine that the images were not computer generated. He further argues that Cannon did not provide the state circuit court judge with a copy of the images or a physical description that would lead him to believe that the children depicted in the images were, in fact, less than 18 years old.

The Fourth Amendment requires that search warrants be issued only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause exists when the totality of the circumstances evince a fair probability of discovering contraband. *United*

*States v. Anton*, 546 F.3d 1355, 1385 (11th Cir. 2008).  In reviewing an application for a warrant, the reviewing court's probable cause determination is confined to the content of that application.  *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention."); *United States v. Lockett*, 674 F.2d 843, 844 (11th Cir. 1982).  This Court also is obligated to pay great deference to the issuing judge's determination of probable cause:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place.  And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . [concluding]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Only in limited circumstances is deference not accorded to an issuing judge's probable cause determination.  Deference is not accorded to the issuing judge if (1) law enforcement knowingly or recklessly submitted a false affidavit or omitted material information from the affidavit, (2) the magistrate was not neutral, or (3) the affidavit was facially insufficient to make a reasoned probable cause determination.  *United States v. Leon*, 468 U.S. 897, 913-15 (1984).

Gabel argues that Judge Lynch's probable cause determination is not entitled to deference because law enforcement knowingly or recklessly omitted material information from the affidavit.  Specifically, Gabel contends that Cannon's affidavit omitted the material fact that detective Vella used a law enforcement enhanced program to obtain files from Gabel's computer.  The argument fails for multiple reasons.

First, Cannon did not omit material information.  Because Vella's warrantless search did not violate the Fourth Amendment, Cannon did not omit information about wrongful police activity: no wrongful activity occurred.  It was therefore immaterial to Judge Lynch's probable cause determination that law enforcement obtained files pursuant to a lawful warrantless search.

12

Second, Cannon's investigation revealed the same incriminating information as did Vella's. Cannon independently determined that a user of Gabel's IP address was sharing child pornography over the internet. It would have been superfluous to include the additional fact that another law enforcement officer conducted a parallel investigation that yielded substantially the same information. If anything, omitting this cumulative information hindered law enforcement's search warrant application. Had they included it, the evidence generating probable cause for the warrant would have been *greater*.

Third, assuming that information concerning the law enforcement techniques used to download Gabel's files is material (which it isn't), Cannon's affidavit discloses that Cannon also used a law enforcement enhanced program to search and screen for files on the Gnutella network. Judge Lynch was therefore aware that law enforcement used computer programs unavailable to the general public when they searched Gabel's shared files. He was also aware that the files law enforcement downloaded could be downloaded by any member of the general public.

None of the exceptions articulated in *Leon* apply in this case. The issuing judge's probable cause determination is therefore entitled to deference by this Court.

Moreover, the warrant was supported by probable cause. Cannon's affidavit stated that a computer bearing Gabel's IP address made available at least 127 files of known or suspected child pornography and that Cannon confirmed that these were images of child pornography by cross-referencing them with a national database. The affidavit contained the actual titles of 5 of the 127 images, as well as detailed descriptions of two files which outline various illegal sex acts between adults and children.[8] Lastly, the affidavit included a document subpoenaed from Comcast identifying the IP address with the physical address which law enforcement sough to search.

Gabel's argument that Cannon did not sufficiently confirm that the images he viewed were of real children and not simulations is also without merit. Based on Cannon's training and experience, and the fact that the images he downloaded were cross-referenced with the National Center for Missing and Exploited Children, there was

---

[8]    The titles and descriptions of these pornographic images are available on the docket as a matter of public record (See DE# 40-1).

probable cause to believe that the images depicted child pornography.  And because many of the images depicted prepubescent children, even a lay person could have determined that the pornographic images were in fact of children, not adults.[9]

### ii.  Particularity of Warrant

Gabel challenges the warrant on the grounds that it was overbroad and did not sufficiently delimit the items to be seized.  Gabel also complains that the warrant was overbroad because the IP address at issue was shared by three adults and, as worded, permitted the officers to search the belonging of all three adults.

The Fourth Amendment prohibits the issuance of a warrant unless the warrant "particularly describ[es] the place to be searched, and the persons or things to be seized." This particularity requirement is meant to prevent the issuance of warrants that authorize "a general, exploratory rummaging in a person's belongings."  *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).  "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized."  *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982) (citations omitted).

The search warrant clearly satisfied this requirement.  Paragraphs 8, 9, and 12, specifically limit the search and seizure to correspondence, hard copies, and digital materials that are relevant to prove the possession or distribution of child pornography or exploitation of children.  The warrant did not authorize a fishing expedition.  As the Government's counsel pointed out at the evidentiary hearing, the warrant would not authorize law enforcement, for example, to search and seize information found on a computer or digital storage device related to tax evasion or some other fraud, or any crimes other than those pertaining to the exploitation of children or the distribution and possession of child pornography.

It is true that the warrant permitted law enforcement to search the belongings of any individual residing at the Weston residence.  But Gabel has not cited any case law

---

[9]     It is also not relevant that the actual images were not furnished to the issuing judge.  The circuit court judge was entitled to rely on Cannon's reasonably specific sworn affidavit in making a probable cause determination.  The Supreme Court so held in *New York v. P. J. Video, Inc.*, 475 U.S. 868, 874 n.5 (1986).  *See also United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008).

indicating that this fact renders the warrant unconstitutionally overbroad.  In keeping with the Fourth Amendment's requirement that searches not be "unreasonable," the law "universally recognize[s] that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit."  *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982).  In this circumstance, law enforcement obtained substantial evidence that someone at the Weston residence was sharing hundreds of illegal computer files containing child pornography.   Based on the information available to law enforcement -- that illicit files were shared from a computer accessing the IP address assigned to the Weston residence -- the search warrant properly limited the search to computers, digital storage devices, accessories, and other materials that could contain such contraband.

### c.  Validity of Confession

Finally, Gabel moves to suppress his confession as the fruit of an unconstitutional search.  As explained above, however, neither the warrantless searches of shared files on Gabel's computer nor the search of the Weston residence pursuant to a valid search warrant violated Gabel's Fourth Amendment rights.  As such, Gabel's post-*Miranda* confession was not the fruit of the poisonous tree and should not be suppressed

### IV.   RECOMMENDATION

I recommend that Gabel's motion to suppress be denied.

### V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the Honorable James I. Cohn, United States District Judge.  Each party may file a response to the other party's objection within 14 days of the objections.  [Note: These are the standard deadlines established by Local Magistrate Rule 4(b); the district court may alter the deadlines.].  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein.  *Resolution Trust Corp. v. Hallmark*

15

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)). Any objection must also include a copy of the evidentiary hearing transcript.

RESPECTFULLY RECOMMENDED in Chambers, at Miami, Florida, this 16th day of September, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable James I. Cohn
All counsel of record